UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL BUSINESS AVIATION ASSOCIATION, INC.,<br><br>               Plaintiff,<br><br>       -against-<br><br>THE TOWN OF EAST HAMPTON,<br><br>              Defendant. | No. 2:22-cv-02824 |

**DEFENDANT TOWN OF EAST HAMPTON'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS .................................................................................. 3

ARGUMENT ...................................................................................................... 5

I.     NBAA Misrepresents the 2015 Injunction Issued in Friends of East Hampton .................................................................................................. 6

II.    NBAA's Four-Month Delay In Filing Prevents Issuance of a Temporary Restraining Order. ................................................................................... 6

III.   The FAA Has Primary Jurisdiction Over NBAA's Claims ................................. 11

IV.   NBAA Fails To Meet The Standard For A Temporary Restraining Order or Preliminary Injunction ................................................................... 14

     A.    NBAA Fails To Show A Clear Likelihood Of Success On The Merits ...................................................................................... 16

          1.    The FAA's Interpretation of ANCA is Entitled to Chevron Deference .................................................................. 16

          2.    NBAA Has Failed To Demonstrate a Clear Likelihood Of Showing that ANCA Applies to Airport Closures ...................... 17

          3.    NBAA Has Failed To Demonstrate a Clear Likelihood Of Showing that ANCA Applies to Private-Use Airports ............. 199

          4.    NBAA Has Failed To Demonstrate a Clear Likelihood Of Showing that the Town's Plan Is Inconsistent With The Second Circuit's Decision in Friends of East Hampton ............. 21

     B.    NBAA Fails To Show Irreparable Harm ................................................. 21

     C.    The Balance Of Equities And Public Interest Support The Town ........... 23

CONCLUSION .................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Air Transp. Ass'n of Aa. v. FAA*,
169 F.3d 1 (D.C. Cir. 1999) ................................................................... 16

*Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. Of Trade*,
412 U.S. 800 (1973) ........................................................................... 13, 14

*Brooklyn Brands LLC v. Lieberman*,
No. 18-CV-7245, 2018 WL 10246003 (E.D.N.Y. Dec. 23, 2018) ...................... 7, 9

*Carson Optical, Inc. v. Alista Corp.*,
No. 19-CV-1725, 2019 WL 3729460 (E.D.N.Y. Aug. 8, 2019) ...................... 10

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council*,
467 U.S. 837 (1984) .............................................................................. 16

*Citibank, N.A. v. Citytrust*,
756 F.2d 273 (2d Cir. 1985) .......................................................... 7, 10, 22

*City of Burbank v. Lockheed Air Terminal*,
411 U.S. 624 (1973) ......................................................................... 13, 16

*Ellis v. Tribune Television Co.*,
443 F.3d 71 (2d Cir. 2006) ................................................... 11, 12, 13, 14

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009) ................................................................... 21

*Fed. Power Comm'n v. La. Power & Light Co.*,
406 U.S. 621 (1972) .............................................................................. 11

*Flores v. Town of Islip*,
382 F. Supp. 3d 197 (E.D.N.Y. 2019) ............................................... 15, 23

*Fox Ins. Co. v. Envision Pharm. Holdings, Inc.*,
No. CV-09-0237, 2009 WL 790312 (E.D.N.Y. Mar. 23, 2009) ................... 22, 23

*Free Cnty Ltd v. Drennen*,
235 F. Supp.3d 559 (S.D.N.Y. 2016) ........................................................ 8

*Friends of East Hampton v. Town of East Hampton*,
841 F.3d 133 (2d Cir. 2016) ................................................................... 20

*Kappelmann v. Delta Air Lines, Inc.*,
539 F.2d 165 (D.C. Cir. 1976) ................................................................ 13

## TABLE OF AUTHORITIES
## CONTINUED

**Page(s)**

*Majorica, S.A. v. R.H. Macy & Co., Inc.*,
  762 F.2d 7 (2d Cir. 1985)..................................................................................................7

*Mical Commc'ns, Inc. v. Sprint Telemedia, Inc.*,
  1 F.3d 1031 (10th Cir. 1993) ...........................................................................................13

*N.Y. State Thruway Auth. v. Level 3 Commc'ns, LLC*,
  734 F. Supp. 2d 257 (N.D.N.Y. 2010)......................................................................11, 15

*New England Legal Found. v. U.S. Dep't of Transp.*,
  883 F.2d 157 (1st Cir. 1989).............................................................................................12

*No Spray Coal., Inc. v. City of N.Y.*,
  252 F.3d 148 (2d Cir. 2001).............................................................................................15

*Nw. Airlines, Inc. v. Cnty. of Kent, Mich.*,
  510 U.S. 355 (1994)..........................................................................................................13

*Nw. Airlines, Inc. v. FAA*,
  14 F.3d 64 (D.C. Cir. 1994)..............................................................................................16

*Omnistone Corp. v. Cuomo*,
  485 F. Supp. 3d 365 (E.D.N.Y. 2020) .............................................................................10

*Pankos Diner Corp. v. Nassau Cnty. Leg.*,
  321 F. Supp. 2d 520 (E.D.N.Y. 2003) .............................................................................15

*Raja v. Burns*,
  19-CV-01328, 2019 WL 1118044 (E.D.N.Y. Mar. 11, 2019)...........................................8

*Rodriguez ex rel. Rodriguez v. DeBuono*,
  175 F.3d 227 (2d Cir. 1999).............................................................................................15

*Saget v. Trump*,
  375 F. Supp. 3d 280 (E.D.N.Y. 2019) .............................................................................23

*Se. Queens Concerned Neighbors, Inc. v. F.A.A.*,
  229 F.3d 387 (2d Cir. 2000).............................................................................................16

*T-Mobile Ne. LLC v. Riverhead Water Dist.*,
  No. 15-CV-6310, 2016 WL 373968 (E.D.N.Y. Jan. 29, 2016) ........................................22

*TCG New York, Inc. v. City of White Plains*,
  305 F.3d 67 (2d Cir. 2002)...............................................................................................11

## TABLE OF AUTHORITIES
### CONTINUED

Page(s)

*Tough Traveler, Ltd. v. Outbound Prods.*,
60 F.3d 964 (2d Cir. 1995)............................................................................10, 22

*U.S. v. The Boeing Co.*,
825 F.3d 1138 (10th 2016)..................................................................................12

*U.S. v. Students Challenging Regul. Agency Proc.*,
412 U.S. 669 (1973)............................................................................................14

*U.S. v. W. Pac. R.R. Co.*,
352 U.S. 59 (1956)..............................................................................................11

*Westchester Fire Ins. Co. v. 31 Operating, LLC*,
No. 21CV802LDHVMS, 2021 WL 633749 (E.D.N.Y. Feb. 18, 2021) .................10

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)..........................................................................................15, 23

**Statutes**

49 U.S.C.
App. 2153 ............................................................................................................12
App. 2154 ............................................................................................................12
App. 2155 ............................................................................................................12
App. 2156 ............................................................................................................12
§ 47523(a) .....................................................................................................17, 19
§ 47524(c) ...........................................................................................................17

Airport Noise and Capacity Act of 1990 ............................................................ *passim*

**Other Authorities**

14 C.F.R.
§ 16.1..................................................................................................................13
§ 157.2..........................................................................................................19, 20
§ 157.5................................................................................................................. 4
§ 161 .............................................................................................................17, 19
§ 161.1................................................................................................................12
§ 161.3(c) ...........................................................................................................17

Rule 11(b)(1).......................................................................................................... 1

## INTRODUCTION

This Court should deny Plaintiff National Business Aviation Association's ("NBAA") motion for a temporary restraining order and preliminary injunction.  NBAA asks this Court to second guess the Federal Aviation Administration's ("FAA") judgment regarding the legality and implications of an aviation matter squarely within the agency's expertise: the Town of East Hampton closing (or "deactivating") the public-use East Hampton Airport ("HTO") and opening (or "activating") a new, private-use East Hampton Town Airport ("JPX").  NBAA suggests that the Town is a rogue actor in completing this closure-and-opening process and, in so doing, is violating an order of this Court.  But NBAA failed to (or chose not to) explain to this Court that the FAA has been working alongside the Town to effectuate this process for years and, months ago, formally approved the closure of HTO to occur on May 17, 2022, and opening of JPX on May 19, 2022.  Indeed, it is *because of*—not *in spite of*—this Court's order, (Bowman Decl. ¶ 7, Ex. 7.), that the Town and FAA chose to complete this first-of-its-kind process.

*First*, and most obviously, this Court should deny NBAA's motion because NBAA sat on its hands and, in so doing, is the author of its own "emergency."  This Court has been consistent in finding that a three-month delay in filing a motion for temporary restraining order itself warrants denying relief.  In what can only have been motivated by gamesmanship, NBAA waited *four months* to seek this relief and then decided to file this emergency motion on a Saturday afternoon just 72 hours before the date on which FAA has authorized HTO to close.[1]

---

[1] On Saturday May 14, 2022, at 4:44 p.m. NBAA informed the Town that it seeks to be heard on this motion on "Monday morning."  NBAA is well aware that on Friday, May 13, 2022, the Presiding Justice for Suffolk County ordered the Town to appear for argument on Monday at 11:30 a.m. related the exact same issue for three cases seeking the exact same relief.  NBAA's motion is not only frivolous as set forth *infra*, its tactics are also subject to inquiry under Rule 11(b)(1).

*Second*, even if NBAA had not sat on its hands for four months, this Court should defer ruling on the sole issue raised by NBAA under the primary jurisdiction doctrine.  The legal and policy implications of the Town closing HTO and opening JPX should be resolved by the FAA in the first instance.  Not only is the FAA fully aware of the Town's plan, it is also already reviewing a complaint that raises an identical issue regarding that plan filed by an airport user who is seeking the same relief.  *See* FAA Docket 16-22-05.

*Finally*, NBAA's motion fails on the merits.  NBAA will not be able to demonstrate a "clear or substantial" likelihood of success on the merits:  the showing necessary for a mandatory injunction, which is what NBAA seek here.  NBAA claims that the Town violated the Airport Noise and Capacity Act of 1990 ("ANCA") by closing HTO and opening the private-use JPX subject to a prior permission required (or "PPR") framework.[2]  But ANCA does not apply to airport closures and ANCA does not apply to private-use airports.  The Town's entire plan was built around the knowledge that it had to comply with, or fall outside the purview of, ANCA.  Working with the FAA, the closure-and-open process was developed to achieve that end.  Moreover—and setting aside for the moment that NBAA waited over four months to file this lawsuit—NBAA's only alleged "irreparable" harm is unrelated to the closure of HTO (and instead relates to operating rules at JPX).  Last, the equities and public interest both support the Town's localization of the airport, which was put in place in response to a two-year-long public process in which over 80% of stakeholders stated they would support the approach ultimately adopted by the Town.

---

[2] The prior permission required framework was expressly suggested by the FAA in the November 2020 letter discussed *infra*.  Pursuant to New York environmental laws, the 2022 summer season's prior permission required framework is temporary and designed to allow the Town to collect data related to environmental impacts, if any, related to the new operating rules.

This Court should deny NBAA's motion in its entirety.  At minimum, this Court should deny NBAA's motion for a temporary restraining order and set a briefing schedule regarding NBAA's motion for a preliminary injunction, rather than reward its improper, belated filing.

## STATEMENT OF FACTS

The Town owns and operates HTO, a "public-use" airport located in East Hampton, New York.[3]  In 2001, the Town accepted federal funds to pay for improvements at HTO.  In exchange, the Town agreed to operate HTO as a "public use" airport for 20 years (until September 2021).  The Town intentionally did not accept federal funds after 2001 for the sole purpose of securing the right to implement noise and access limitations at HTO when that 20-year period expired.

Anticipating the expiration of the 20-year period in September 2021, the Town engaged in a robust public process to determine the future of the airport.  The Town worked hand-in-hand with the FAA to determine its options.  It is well documented that the Town's nearly two-year-long process of closing (or "deactivating") the public-use HTO and opening (or "activating") the new, private-use JPX: (1) was suggested by the FAA in November 2020; (2) was executed upon in close coordination with the FAA over the ensuing 19 months; and (3) was fully authorized by the FAA in March 2022.  Not only is the Town's plan consistent with federal law, including the Airport Noise and Capacity Act of 1990 ("ANCA"), it has enjoyed FAA support, cooperation, and oversight every step of the way.

*First*, the FAA provided the Town with a letter outlining the Town's options related to the future of the airport in November 2020.  (Declaration of Philip M. Bowman ("Bowman Decl.) ¶ 3, Ex. 1.)  Among the four options provided by the FAA was a suggestion that the Town close

---

[3] A "public use" airport is akin to an interstate highway.  It is open 24 hours a day, 365 days a year, and is paid in full or in part by the federal government.  The owner (here, the Town) of a public-use airport has no ability to control whether, when, or how an aircraft operator uses it.

HTO and open a new, private-use airport at the same location.[4]  The FAA suggested this option, and the Town decided to pursue it, for the sole purpose of allowing the Town to exert local control over its airport while still complying with ANCA as well as this Court's order in the *Friends of East Hampton* matter. (Bowman Decl. ¶ 7, Ex. 7.)

*Second*, in reliance on the FAA's November 2020 guidance, the Town embarked on a thorough and transparent public process that involved reviewing multiple reports from seven different expert consultants, receiving public comments at more than 10 public meetings, holding four community engagement sessions specifically designed to understand the community's preferences related to the future of HTO, and reviewing over 1,000 comments submitted by stakeholders.  Throughout this public process, the community made clear that HTO cannot continue to negatively impact East Hampton the way it has over the past two decades.  The Town Board thus had its mandate:  work with the FAA to find a way to modify operations at the airport or, if that could not be accomplished, close the airport outright.

*Third*, the FAA and the Town designed and executed a first-of-its-kind process to close HTO and open JPX.  The Town complied with established statutes and regulations, but it also had to work with the FAA to establish new processes given that no publicly owned (*e.g.*, owned by a municipality) airport had ever closed a public-use airport and opened a private-use airport at the same location.  Working in conjunction with the FAA, pursuant to 14 C.F.R. § 157.5 the Town formally noticed its intent to pursue this plan on January 20, 2022, when it filed two Form 7480-1s with the FAA:  one to deactivate HTO and one to activate the new, private-use airport. (Bowman Decl. ¶ 4, Exs. 2-3.) The next major milestone was the FAA completing two separate

---

[4] A "private use" airport is akin to a private road.  The owner (here, the Town) can control who uses it, when that use occurs, and place conditions on such use.  The Town also has to pay for all aspects of the airport and cannot rely on federal funds in any way.  To be sure, a "private use" airport can be left open to the public—and in fact that is precisely what the Town intends to do when JPX opens—but it is "private" because it is not federally funded.

4

airspace analyses, one on March 18, 2022 and the other on March 22, 2022.  Both of these studies resulted in the FAA having "no objection" to the Town's plan of deactivating HTO and activating JPX. (Bowman Decl. ¶ 5, Exs. 4-5.)

*Finally*, the FAA approved the Town's application for Town-funded instrument procedures in April 2022, meaning that JPX would have all safety and operational capabilities available upon opening.  Put another way, there would be no safety or operational distinctions between HTO and JPX—all navigation, communication, and weather aids that are in use at HTO will be available at JPX when it opens this Thursday (May 19, 2022).  Confirming its approval of the plan, on April 15, the FAA published notice in the *Federal Register* stating unequivocally that HTO will permanently close on May 17 and JPX will open on May 19.  (Bowman Decl. ¶ 6, Ex. 6.)

Despite NBAA's suggestion that it needs imminent relief, NBAA has been actively following the Town's plan for *years*.  In fact, NBAA has had a specific section of its website dedicated to tracking HTO.[5]  Most pertinent here, on January 21, 2022, the day after the Town announced its intent to transition HTO to a locally controlled, private-use JPX, NBAA issued a release stating that NBAA was "closely monitoring the developments" surrounding the airport.[6]  And yet, the instant suit—purported for emergency relief—was not filed until a May 14, 2022, a Saturday afternoon four months later.

## ARGUMENT

This Court should deny NBAA's requested relief for three independent reasons: (1) NBAA cannot create their own "emergency" by waiting nearly *four* months to file a motion for a temporary restraining order; (2) the FAA is already reviewing a materially identical claim and the

---

[5] https://nbaa.org/aircraft-operations/airports/hto/.
[6] https://nbaa.org/aircraft-operations/airports/hto/east-hampton-airport-stakeholders-weigh-next-steps-following-board-decision/

doctrine of primary jurisdiction warrants deferring to the agency's expertise in the first instance; and (3) NBAA falls woefully short of meeting its exacting burden for a temporary restraining order.  For each of these reasons, this Court should deny NBAA's motion.

## I.      NBAA Misrepresents the 2015 Injunction Issued in *Friends of East Hampton*

Preliminarily, NBAA patently misrepresents the nature of the injunction this Court ordered in the *Friends of East Hampton* case.  *See* Docket 87.  The injunction only addresses the laws enacted by the Town in 2015 and has no bearing on any subsequent effort by the Town to work with the FAA in compliance with federal law to exert local control over the airport.

Specifically, the injunction states that "Sections 75-38 and 75-39 of the Town of East Hampton Code" did not comply with ANCA and thus were "preempted by federal law and are therefore unenforceable."  (Bowman Decl. ¶ 7, Ex. 7.) The injunction further states that the Town "and its agents are permanently enjoined from enforcing Local Laws Nos. 3, 4, and 5 of 2015, each adopted on April 16, 2015, as amended by Local Law No. 7 of 2015, adopted on May 7, 2015 (currently codified at Sections 75-38 and 75-39 of the Town of East Hampton Code) unless and until Defendant complies with the requirements of [ANCA]."  *Id.*

This injunction has no bearing on the issue before this Court.  The two local laws enjoined, Sections 75-38 and 75-39, are no longer part of Chapter 75 of the Town Code.  Instead, Chapter 75 was amended in April 2022 to address rules and regulations at the new, private-use airport. (Bowman Decl. ¶ 9, Ex. 8.) The injunction is entirely irrelevant to NBAA's claims.

## II.     NBAA's Four-Month Delay In Filing Prevents Issuance of a Temporary Restraining Order.

NBAA sat on its hands for nearly four months.  Then, on a Saturday afternoon just 72 hours before the Town is set to complete the FAA-authorized closure of HTO, NBAA rushed to the courthouse crying emergency.   NBAA's gamesmanship itself justifies denying its motion.

Anything else would reward NBAA's effort to manufacture its own emergency simply to short-circuit standard processes and burden this Court and the Town with an expedited proceeding.

A preliminary injunction is an extraordinary and drastic remedy and should be granted only where the moving party establishes (1) a likelihood of success on the merits, (2) a likelihood that it will suffer irreparable harm if a preliminary injunction is not granted, (3) that the balance of hardships tips in its favor, and (4) that the public interest is not disserved by relief.[7] *Brooklyn Brands LLC v. Lieberman*, No. 18-CV-7245, 2018 WL 10246003, at *1 (E.D.N.Y. Dec. 23, 2018) (citing *JBR, Inc. v. Keurig Green Mtn., Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015)). The standard for the issuance of a temporary restraining order is essentially the same. *Brooklyn Brands*, 2018 WL 10246003, at *1. "However, unlike preliminary injunctions, 'TROs . . . are characteristically issued in haste, in emergency circumstances, to forestall irreparable harm.'" *Id.* (quoting *Romer v. Green Point Sav. Bank*, 27 F.3d 12, 16 (2d Cir. 1994)). "Not surprisingly, then, a [litigant's] '[d]elay in seeking enforcement of [its] rights . . . tends to indicate at least a reduced need for such drastic, speedy action.'" *Id.* (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)); *see also Majorica, S.A. v. R.H. Macy & Co., Inc.*, 762 F.2d 7, 8 (2d Cir. 1985) ("Lack of diligence, standing alone, may . . . preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm."). Such is the case here.

On January 20, 2022, the Town filed two FAA Form 7480-1s and publicly announced that it would be deactivating HTO and activating JPX. (Bowman Decl. ¶ 4, Exs. 2-3.) In that announcement, the Town made clear that it was following the FAA's suggestion in the November 2020 letter to engage in a deactivation-and-activation process, (Bowman Decl. ¶ 10, Ex. 9.), and that JPX would be operated pursuant to a prior permission required framework, (Bowman Decl.

---

[7] A more exacting standard is required in this case due to the relief being sought by NBAA. *See infra*.

¶11, Ex. 10.)  Under a prior permission required framework, the Town would be able to exert local control over its airport and establish reasonable restrictions on use (*e.g.*, curfews, daily roundtrip limits, etc.) to balance community needs with aviation stakeholder interests.  (Bowman Decl. ¶ 12, Ex. 11.)

NBAA was well aware of this January 20 announcement, as the very next day it issued a press release that states: "In a unanimous vote, the East Hampton Town Board on Jan. 20 approved a resolution to deactivate East Hampton Airport (HTO) through a temporary closure on March 1, and reopen it three days later as a 'JPX,' a private-use facility subject to prior permission required conditions."  (Bowman Decl. ¶ 13, Ex. 12.) NBAA added that it was "closely monitoring" the situation.  *Id.*  Accordingly, by January 21, 2022—four months ago—NBAA was on notice of the exact issue it now claims requires immediate and extreme action by this Court.  *See*, *e.g.*, *Free Cnty Ltd v. Drennen*, 235 F. Supp.3d 559, 565 (S.D.N.Y. 2016) ("[A] TRO, perhaps even more so than a preliminary injunction, is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." (quotation marks omitted)); *accord Raja v. Burns*, 19-CV-01328, 2019 WL 1118044, at *4 (E.D.N.Y. Mar. 11, 2019).

Thereafter, the Town and FAA determined that the initial dates chosen for deactivation and activation needed to be delayed to allow the FAA to complete internal processes.  The new dates chosen—May 17 for deactivation of HTO and May 19 for activation of JPX—were specifically requested by the FAA so that the closure and opening would align with FAA navigational chart publication dates.[8]  NBAA was still paying attention and issued the following statement:  "[T]he

---

[8]    The   FAA   publishes   navigational   charts   on   28   and   56   cycles.    *See* https://www.faa.gov/air_traffic/flight_info/aeronav/productcatalog/doles/media/Product_Schedule.pdf.  On May 19, the FAA charts will include information for JPX; HTO will not appear as it will no longer exist as an airport.  This charting change was set in motion on April XX, the last day that updates could be made to the charts that publish on

East Hampton, NY town board voted to delay its plan to deactivate East Hampton Airport (HTO) and then reopen a 'JPX' in its place, with potential new operational restrictions [such as making operations at JPX] subject to prior-permission required conditions imposed at the town's whim, such as curfews, restrictions against certain types of operations and aircraft, and other limitations." (Bowman Decl. ¶ 14, Ex. 13.)

When the Town filed the two Form 7480-1s in January 2022, the FAA thoroughly reviewed the Town's plan, including by completing airspace analyses related to the deactivation of HTO and, separately, the activation of JPX. On March 18 and 22, 2022, the FAA issued "no objection" letters regarding the Town's proposal to deactivate HTO on May 17 and open JPX 33 hours later on May 19. (Bowman Decl. ¶ 5, Exs. 4-5.) Thus, by March 22, 2022, the FAA had formally approved of the Town's plan to deactivate HTO and activate JPX. In response to the FAA's formal approval of the Town's plan, NBAA submitted a letter to the Town and issued a press release, "reaffirm[ing] their position that the town's proposal would not release it from numerous federal requirements to maintain open access to HTO, including the Airport Noise and Capacity Act of 1990 (ANCA) and both the statutory and implied preemptive authority of the FAA." (Bowman Decl. ¶ 15, Ex. 14.) This position that NBAA "reaffirmed" in March regarding ANCA is the exact claim that NBAA now claim needs immediate attention. (Dkt. No. 1 (Complaint) ¶ 96.)

This Court routinely denies requests for temporary restraining orders when the plaintiff waits three months or more to file its motion. In *Brooklyn Brands*, the plaintiff waited "approximately three months" to file its motion for a temporary restraining order. 2018 WL 10246003, at *1. The Court noted that "plaintiff waited no less than six but as much as fifteen weeks to seek emergency relief from the Court—and then did so on the eve of a major holiday

---

May 19. The FAA expressed safety-based concerns with having an airport reflected in the charts if the information was not accurate. This safety issue would result if NBAA's request is granted.

weekend." *Id*.  Because of the plaintiff's delay, the Court refused to hear argument on the motion and found that "plaintiff can wait another few weeks" to have the motion heard.  *Id*.  The Court then set a briefing schedule related to the motion for a preliminary injunction.  *Id*. at *2.  Other cases have similarly found that a three-month delay in seeking relief is dispositive vis-à-vis a motion for a temporary restraining order.  *Westchester Fire Ins. Co. v. 31 Operating, LLC*, No. 21CV802LDHVMS, 2021 WL 633749, at *1 (E.D.N.Y. Feb. 18, 2021) ("Plaintiff waited approximately three months to seek emergency relief from this Court. Plaintiff's delay undermines any need for speedy action by the Court"); *Carson Optical, Inc. v. Alista Corp*., No. 19-CV-1725, 2019 WL 3729460, at *5 (E.D.N.Y. Aug. 8, 2019) (two- to three-month delay was unreasonable).

Here, four months after the Town announced its plan and four months after NBAA made a statement regarding that plan, NBAA seeks a temporary restraining order.  NBAA's request for temporary relief should be denied due to this delay alone.  *See, e.g*., *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) ("Though such delay may not warrant the denial of ultimate relief, it may, standing alone . . . preclude the granting of preliminary injunctive relief because the failure to act sooner undercuts the urgency that ordinarily accompanies a motion for preliminary relief and suggest that there is, in fact, no irreparable injury"); *Citibank*, 756 F.2d at 276  (same); *Omnistone Corp. v. Cuomo*, 485 F. Supp. 3d 365, 36768 (E.D.N.Y. 2020) (in addressing an application for a temporary restraining order, "the Court must examine whether the movants have demonstrated a threat of irreparable harm that will occur *immediately* to justify a temporary restraining order, while the temporal context of a preliminary injunction takes a longer view") (emphasis in original).  This alone warrants denying NBAA's motion for a temporary restraining order.  To the extent the Court finds NBAA's claim plausible, *but see infra*, it should order a briefing schedule and follow typical processes for a preliminary injunction.

### III.    The FAA Has Primary Jurisdiction Over NBAA's Claims

Although this Court need not reach this issue, this Court can deny NBAA's motion in its entirety under the primary jurisdiction doctrine.  Due to the policy-laden issue raised by NBAA's claim—coupled with the fact that the FAA suggested the Town pursue this plan, designed the process to effectuate it, and then formally approved the plan in March—this Court should dismiss (or at minimum, stay) this action.  What's more, the FAA is already reviewing an administrative action that raises the exact same question, and binding precedent makes clear that the agency should analyze this type of technical issues within its jurisdiction in the first instance.

Primary jurisdiction is a richly developed, prudential doctrine with the chief mission of "'promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties' . . . and to ensure that they 'do not work at cross-purposes.'"  *Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006).  "In order for this mission to be fulfilled, judicial forbearance in managing the litigation is essential."  *N.Y. State Thruway Auth. v. Level 3 Commc'ns, LLC*, 734 F. Supp. 2d 257, 262 (N.D.N.Y. 2010).  The paramount goals of the primary jurisdiction doctrine are consistency and uniformity in the regulation of an area entrusted to a particular federal agency, *Ellis*, 443 F.3d at 82 (citations omitted), and the "resolution of technical questions of facts through the agency's specialized expertise, prior to judicial consideration of the legal claims," *TCG New York, Inc. v. City of White Plains*, 305 F.3d 67, 74 (2d Cir. 2002). Deference to the agency is thus appropriate "whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *U.S. v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956).  Simply put, although "the agency's decision is not the last word, it must assuredly be the first." *Fed. Power Comm'n v. La. Power & Light Co.*, 406 U.S. 621, 647 (1972).

Courts have considered four general issues when reviewing primary jurisdiction:

"(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." *Ellis*, 443 F.3d at 82–83.[9]   Each factor weighs in favor of this Court dismissing (or staying) this case pending resolution by the FAA.

*First*, NBAA is asking this Court to second-guess the FAA's determination that ANCA is not implicated by the Town deactivating HTO and activating JPX.  This inquiry touches upon FAA processes and a statutory scheme that expressly delegates authority in the first instance to the FAA. *See* 14 C.F.R. § 161.1 ("This part implements the Airport Noise and Capacity Act of 1990 (49 U.S.C. App. 2153, 2154, 2155, and 2156).").  The issue is thus within the specialized knowledge of the FAA and accordingly warrants deference to the FAA.

Moreover, NBAA ultimately poses a policy question:  should the Town be able to rely on the FAA's suggested process to obtain local control over its airport given that this specialized area of the law has been expressly delegated to the FAA?  The Town says yes; NBAA ask this Court to overrule the FAA.  Given the policy issue at hand, this Court should defer to the FAA in the first instance. *See, e.g.*, *U.S. v. The Boeing Co.*, 825 F.3d 1138, 1147 (10th 2016) (finding district court did not err in concluding that FAA had primary jurisdiction over aviation policy considerations); *New England Legal Found. v. U.S. Dep't of Transp.*, 883 F.2d 157, 175 (1st Cir. 1989) (finding that FAA has primary jurisdiction over matters concerning policy issues related to

---

[9] Historically, courts would also consider whether deferring to the agency would delay adjudication. However, the Second Circuit has "noted that such considerations of judicial economy should not be considered because 'the Supreme Court has consistently held that there are only two purposes to consider in determining whether to apply the primary jurisdiction doctrine—uniformity and expertise" and "the Supreme Court has never identified judicial economy as a relevant factor.'" *Ellis*, 443 F.3d at 90 (citation omitted).

air carriers); *Kappelmann v. Delta Air Lines, Inc.*, 539 F.2d 165, 173 (D.C. Cir. 1976) (deferring to FAA due to aviation policy considerations).  This factor weighs in favor of deferring to the FAA's primary jurisdiction.

    *Second*, the FAA's supervision and management of the nation's airports and aviation system is "intensive and exclusive." *City of Burbank v. Lockheed Air Terminal*, 411 U.S. 624, 633 (1973).  As mentioned, ANCA expressly delegates its implementation and interpretation to the FAA's discretion.  14 C.F.R. § 16.1.  And pursuant to that discretion, the FAA has already informed the Town that its plan—the plan the FAA suggested in the first instance and then worked with the Town to implement—would be compliant with ANCA.  NBAA does not dispute that the FAA was entrusted to determine and regulate airports which weighs in favor of deferring to the agency.  *See Ellis*, 443 F.3d at 86–87.

    *Third*, "Courts should be especially solicitous in deferring to agencies that are simultaneously contemplating the same issues." *Ellis*, 443 F.3d at 88.  This is because it creates a "real possibility that a decision by this court prior to the [agency's] response . . . would result in conflicting decisions." *Mical Commc'ns, Inc. v. Sprint Telemedia, Inc*., 1 F.3d 1031, 1040 (10th Cir. 1993).  Such a possibility can easily be avoided simply by ensuring that the FAA's processes are completed prior to this Court rendering a decision.  *E.g.*, *Nw. Airlines, Inc. v. Cnty. of Kent, Mich.*, 510 U.S. 355, 366 n.10 (1994) (noting that challenges to airport conduct should "have been referred, prior to any court's consideration, to the Department of Transportation under the primary jurisdiction doctrine").  Moreover, "the Supreme Court has made clear that *district courts should not issue injunctive relief* while a decision over which the [agency] has exclusive authority is pending." *Ellis*, 443 F.3d at 88 (emphasis added); *Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. Of Trade*, 412 U.S. 800, 821 (1973) ("The fact that issuing an injunction may undercut the

13

policies served by the doctrine of primary jurisdiction is therefore an important element to be considered."). Instead, this Court should wait until the FAA "is barred from further review" at which time "there is no prospective danger of inconsistent rulings within the law of the case." *Ellis*, 443 F.3d at 89.

In this case, the FAA is already considering identical issues is an administrative proceeding filed by an airport user with the same ultimate objective: stopping the Town from completing the years-long process of closing HTO and opening JPX. *See* FAA Docket 16-22-05. Notwithstanding that NBAA would prefer that this Court ignore the FAA's right to resolve this issue in the first instance, if this Court were to rule in favor of NBAA it would create the real possibility of inconsistent rulings given that the FAA is simultaneously addressing whether ANCA applies to the Town's plan. This Court should be skeptical of NBAA's invitation to interfere with an on-going FAA process, especially given the Supreme Court's admonitions to the contrary. *See U.S. v. Students Challenging Regul. Agency Proc.*, 412 U.S. 669, 699 (1973).

*Finally*, "[i]f prior application to the agency is present, this factor provides support for the conclusion that the doctrine of primary jurisdiction is appropriate." *Ellis*, 443 F.3d at 89. As noted, the FAA is already considering the specific issue raised by NBAA.

*   *   *   *   *

This Court should dismiss (or at minimum, stay) this case under the primary jurisdiction doctrine. Not only should the FAA address this technical policy issue in the first instance, the FAA is already engaged in an administrative process to resolve this very issue.

## IV.   NBAA Fails To Meet The Standard For A Temporary Restraining Order or Preliminary Injunction

As set forth above, this Court should defer resolution to the FAA. Not only does "judicial forbearance" support such an approach, *Level 3*, 734 F. Supp. 2d at 262, it is also supported by the

14

myriad policy issues tied up in NBAA's sought-after remedy.  In any event, even if this Court were to reach the merits of NBAA's last-minute motion, NBAA does not meet its burden to obtain such "extraordinary" relief.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.").

As a preliminary matter, NBAA is seeking a mandatory injunction as it is asking this Court to order the Town to take several affirmative steps to stop the closure of HTO.  When, as here, "the moving party seeks a preliminary injunction that will affect 'government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the *more rigorous likelihood-of-success standard*."  *No Spray Coal., Inc. v. City of N.Y.*, 252 F.3d 148, 150 (2d Cir. 2001) (emphasis added); *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233 (2d Cir. 1999).  Because NBAA is trying to invalidate the Town's plan to deactivate HTO and activate JPX more than four months after it was formally announced, the "more rigorous" standard applies, and NBAA must "demonstrate a 'clear' or 'substantial' likelihood of success on the merits of their claim."  *See Flores v. Town of Islip*, 382 F. Supp. 3d 197, 205 (E.D.N.Y. 2019); *Pankos Diner Corp. v. Nassau Cnty. Leg.*, 321 F. Supp. 2d 520, 523 (E.D.N.Y. 2003) (requiring a clear or substantial likelihood of success on the merits where the NBAA sought "to enjoin enforcement of and, ultimately, void a statute that was already in effect at the time that the Complaint was filed").  It is thus NBAA's burden to establish:

(1) a *substantial* or *clear* likelihood of success on the merits;

(2) irreparable harm; and

(3) that the balance of equities and the public interest support its relief.

*See id*.  If any one of these factors is not met, NBAA's motion for a preliminary injunction must

be denied.[10]

### A.      NBAA Fails To Show A Clear Likelihood Of Success On The Merits

NBAA argues that the Town's plan to close HTO and open JPX subject to a trial PPR

framework violates ANCA.  NBAA fails to demonstrate a clear likelihood of success on the merits

for several reasons, including:  (1) the FAA, the federal agency entrusted to implement ANCA, is

entitled to deference in its determination that the Town's plan does not violate ANCA; (2) there

are no cases or statutory guidance—zero—finding that ANCA applies to the closure of a public-

use airport; (3) similarly, there are zero cases finding that ANCA applies to private-use airports

and the FAA has made clear that ANCA does *not* apply to private-use airports; and (4) the Town's

plan is consistent with this Court's order in *Friends of East Hampton*.

### 1.      The FAA's Interpretation of ANCA is Entitled to *Chevron* Deference

NBAA cannot show a clear likelihood of success on the merits because the FAA has

affirmatively taken a different position and the FAA's interpretation is entitled to *Chevron*

deference.  It is black-letter law that the FAA has exclusive jurisdiction over all matters pertaining

to federal aviation policy.  *See Burbank*, 411 U.S. at 633.  The FAA is thus entitled to *Chevron*

deference insofar as it is interpreting statute it administers.  *Se. Queens Concerned Neighbors, Inc.*

*v. F.A.A.*, 229 F.3d 387, 394 (2d Cir. 2000) (stating that "Congress has not 'directly spoken to the

precise question at issue' in the language of the statute and therefore the [FAA's] interpretation

will be upheld as long as it is reasonable and consistent with the statute's purpose." (quoting

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 842–44 (1984)); *see Air Transp.*

*Ass'n of Aa. v. FAA*, 169 F.3d 1, 4–5 (D.C. Cir. 1999) (a challenge to the FAA's interpretation of

a statute it administers is reviewed with *Chevron* deference); *Nw. Airlines, Inc. v. FAA*, 14 F.3d

---

[10] Even if the traditional preliminary injunction standard for prohibitory injunctions applies, NBAA fails to
demonstrate a likelihood of success on the merits for the same reasons discussed *infra*.

64, 68 (D.C. Cir. 1994) (same).

In the November 2020 letter, the FAA explained to the Town that it could close HTO and then "change the use of the airport from public to private use." (Bowman Decl. ¶ 3, Ex. 1.) If the Town chose this option, the FAA went on, it could open "a private-use airport made available to others by the Town through authorized rights or by requiring prior permission." *Id.* Distilled, the FAA informed the Town that it could deactivate HTO and activate JPX under a "prior permission" or PPR framework in compliance with all applicable federal laws, including ANCA.

The FAA's letter drew a distinction between this closure-and-opening option (which is not precluded by ANCA), with other options available to the Town (which required satisfying ANCA procedures). For example, the FAA explained that the Town could pursue "negotiation of an agreement for mandatory restrictions on aircraft operators *per Part 161*." *Id.* (emphasis added). Part 161 is the set of regulations that implements ANCA, confirmed by the FAA's subsequent citation to "49 U.S.C. Section 47524(c)," the citation for ANCA. In other words, ANCA was top of mind for the FAA and the FAA specified the relationship that the Town's various options had vis-à-vis ANCA. And FAA reached the conclusion that deactivating HTO and activating a new, private-use airport, would fully comply with ANCA. This interpretation is entitled to *Chevron* deference.

### 2. NBAA Has Failed To Demonstrate a Clear Likelihood Of Showing that ANCA Applies to Airport Closures

NBAA fails to meet its burden of showing that ANCA applies to the closure of HTO. ANCA imposes a program for "reviewing airport noise and access restrictions" at public airports. 49 U.S.C. § 47523(a). The FAA has promulgated regulations relating to procedures for imposing such "noise or access restrictions." 14 C.F.R. § 161.3(c). But closing an airport is not a "noise or access restriction" and instead is handled entirely in a different section of the federal aviation

regulations, Part 157.  NBAA cites no case to surmount that textual roadblock.

Even if the statutory text were ambiguous (it is not), other practical considerations make clear that ANCA does not govern airport closures.  First, the FAA's November 2020 letter advised the Town that it would need to proceed under ANCA's procedural regulations ("14 C.F.R. §§ 161, *et seq.*") only if it attempted to "negotiat[e] mandatory restrictions for aircraft operations," but included no such requirement for closing HTO and opening JPX.  (Bowman Decl. ¶ 3, Ex. 1.) Second, despite the fact that no airport has *ever* successfully implemented noise or access limitations under ANCA, scores of previously federally obligated airports have closed down permanently since ANCA was enacted without ever purporting to comply with ANCA or receiving any FAA disapproval.[11] Third, NBAA's suggestion that ANCA applies to airport closures depends on the nonsensical assumption that the FAA has been knowingly abdicating its duty to enforce ANCA for decades.

Finally, taken to its logical conclusion, NBAA's reading of ANCA would wreak havoc on routine airport operations.  Presumably (although it does not actually explain the source of its statutory assumption), NBAA reads ANCA's application to "noise and access limitations" as reaching any activity that has the effect of limiting noise or access.  Thus, ANCA would apply not just to a regulation limiting the maximum noise impact of aircraft, but to any action that incidentally limits noise or access, such as the Town closing HTO for 33 hours.  But if that were true, it would mean airports could not, for instance, close down a runway to make safety repairs (as the closure would limit access to the runway), or delay an arrival due to a safety issue (as the

---

[11] Examples of airports that were once federally obligated and then closed without ANCA incident include: Atlantic City Municipal Airport in Atlantic City, New Jersey; McIntosh Municipal Airport in McIntosh, South Dakota; Fulton-Itawamba County Airport in Fulton, Mississippi; Opa-locka West Airport in Miami-Dade County, Florida; Rialto Municipal Airport in San Bernardino County, California; and Arlington Municipal Airport in Shelby County, Tennessee.

delay would limit noise from the flight).  NBAA cites nothing to support that absurd result.

### 3. NBAA Has Failed To Demonstrate a Clear Likelihood Of Showing that ANCA Applies to Private-Use Airports

NBAA similarly fails to demonstrate a clear likelihood of succeeding on the claim that ANCA applies to JPX.  NBAA's inability to cite a single statute, regulation, or case that supports its novel reading of ANCA alone defeats the requested relief.  NBAA did not overlook support for its position—none exists.

ANCA imposes a program for reviewing airport noise and access restrictions at public-use airports.  49 U.S.C. § 47523(a).  The FAA has promulgated regulations relating to procedures for imposing such noise or access restrictions.  14 C.F.R. §§ 161, *et seq*.  But, critically, it has not applied those regulations to private-use airports.  Indeed, the FAA explicitly permits private-use airports to operate a PPR framework.  *See, e.g*., 14 C.F.R. § 157.2 (defining "private use" to mean "available for use by the owner only or by the owner and other persons authorized by the owner"); Federal Aviation Administration, Advisory Circular 150/5200-35A (Sept. 23, 2010), https://bit.ly/3Discq1 (noting that "[r]estrictions such as 'prior permission required' or 'use at your own risk' or 'contact the airport manager prior to landing' are not permissible at public use airports" but that "[t]he owners of private use airports do not have to reiterate in a remark in data element 110 that the airport is private use or that prior permission is required").

The FAA also recognizes the legitimate existence of approximately 14,400 private-use airports, heliports, and seaplane bases, all of which are permitted to operate under a prior-permission-required model.  Federal Aviation Administration, Airport Categories – Airports (last visited April 27, 2022), https://bit.ly/3JM6n4x.  And, notably, in the November 2020 letter itself, the FAA authorized the Town to open JPX as a "private-use airport" that "require[s] prior permission," without raising any concerns regarding ANCA.  (Bowman Decl. ¶ 3, Ex. 1.) Because

19

a PPR framework is generally inconsistent with ANCA's prohibition on imposing noise or access restrictions, if ANCA did apply to private-use airports, these actions by the FAA would make no sense (they would amount to the FAA encouraging private parties to break the law), and the primary distinction between private-use and public-use airports would vanish. *See* 14 C.F.R. § 157.2.

Rather than acknowledge as much, NBAA asks this Court to flip the FAA's longstanding practice, precedents, and recent guidance to the Town on its head, demanding that the Department expand the reach of ANCA to JPX even though it will be a private-use airport. But the only justification for NBAA's position relies on conflating two concepts: airports owned by public entities and airports that are public-use. Those two concepts are not, in fact, coextensive. Indeed, over 700 of the 14,400 airports, heliports, and seaplane bases that are for private-use are owned by public entities. (Bowman Decl. ¶ 16, Ex. 15.) And of those airports, the FAA identified at least 19 that were previously grant obligated but are now for private-use and subject to a PPR framework. (Bowman Decl. ¶ 17, Ex. 16.)

Accepting NBAA's position thus would lead to illogical and dangerous results. For example, if ANCA applied to private-use airports owned by public entities, a helipad at a public hospital or police department could no longer require operators to obtain prior permission or otherwise restrict access. In other words, public hospitals and police departments would be required to accept any aircraft that found it convenient to use their landing areas, jeopardizing the ability of the hospital to admit critically ill patients transported by air or for the police to quickly deploy emergency services. That result is not supported by the text of ANCA.

20

4.      **NBAA Has Failed To Demonstrate a Clear Likelihood Of Showing that the Town's Plan Is Inconsistent With The Second Circuit's Decision in** *Friends of East Hampton*

NBAA claims that the Town's plan is inconsistent with the Second Circuit's decision in *Friends of East Hampton*.  Not so.

In *Friends of East Hampton*, the Second Circuit made clear that ANCA applied to noise or access restrictions put in place at "public airports."  841 F.3d 133, 149 (2d Cir. 2016).  The Second Circuit's reference to "public airports" is more precisely a reference to "public-use airports."  The Second Circuit discusses "public airport proprietors" throughout the opinion.  *Id.* at 149-50.  This can only be interpreted one way:  any proprietor of a public-use airport.  Under this commonsense interpretation, the Second Circuit's decision means that ANCA applies to an airport sponsor, regardless of whether it is a public or private entity, so long as the sponsor had accepted federal funds related to that airport.  Thus, privately owned airports that accept federal funds, such as Montauk Airport (MTP), are subject to ANCA.  And publicly owned airports that do not accept federal funds, such as JPX, are not.  This is consistent with the policy behind ANCA:  ensuring that airports funded with public monies are open for public use.  It also aligns with the FAA position in the November 2020 letter as well as the FAA guidance discussed *supra*.

Simply put, the Second Circuit's decision is limited to "public use" airports and thus does not have any bearing on JPX.

B.      **NBAA Fails To Show Irreparable Harm**

As NBAA recognizes, to demonstrate irreparable harm, NBAA must show "that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm."  *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (citations and modifications omitted).  As this Court has repeatedly recognized, the "premise of a preliminary

21

injunction is that the moving party requires '*immediate* relief to protect its rights' and cannot afford a delay." *T-Mobile Ne. LLC v. Riverhead Water Dist.*, No. 15-CV-6310, 2016 WL 373968, at *3 (E.D.N.Y. Jan. 29, 2016) (emphasis added).  NBAA's delay undercuts any argument that it will suffer "irreparable harm" for purposes of a preliminary injunction.  *See Tough Traveler*, 60 F.3d at 968  ("[T]he 'failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury'") (internal citations omitted).  Indeed, "[p]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiff's rights.  Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." *Citibank*, 756 F.2d at 276 .  This is why the "Second Circuit has 'found delays of as little as ten [10] weeks sufficient to defeat [a finding] of irreparable harm.'" *T-Mobile*, 2016 WL 373968, at *2.  This alone defeats NBAA's motion.

Moreover, the *only* harm claimed by NBAA is business harm.  NBAA cites "potential bankruptcy and loss of goodwill" as a basis for finding irreparable harm (Brief at 9), but then nowhere suggests that any of its members will suffer such alleged harms.  For good reason.  Under the Town's proposed operating rules for the 2022 season, all of NBAA's members will be able to access the airport on reasonable and non-discriminatory terms subject only to commonsense limitations necessary to protect the community, such as a curfew and a one-roundtrip-per-day limit for especially noisy aircraft.  That alone is dispositive.  Failing to meet the required standard, NBAA instead claims that its members may have to charge increased rates or may have to make operational changes and if so, that these impacts may affect its members reputation or goodwill.  NBAA provides no specific allegations to support this allegation.  Such speculative and conclusory claims are insufficient to support a finding of irreparable harm.  *See Fox Ins. Co. v. Envision*

22

*Pharm. Holdings, Inc.*, No. CV-09-0237, 2009 WL 790312, at *7 (E.D.N.Y. Mar. 23, 2009) (finding no irreparable harm where movant alleged that a retailer "*may* cease doing business with" it and where movant would "*likely* fail to meet [its] requirements") (emphasis in original).

NBAA fails to identify any irreparable harm and instead effectively claims business harms that could easily be compensated through money damages in the unlikely event that NBAA ultimately prevails on the merits. This factor favors denying NBAA's motion.

### C.    The Balance Of Equities And Public Interest Support The Town

"Regardless of a plaintiff's ability to demonstrate irreparable harm and substantial likelihood of success on the merits, a district court may deny injunctive relief if it is against the public interest." *Flores*, 382 F. Supp. 3d at 245. Courts must look beyond the interest of the parties and "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. This is especially apt here because "the [Town's] interest *is* the public interest." *Saget v. Trump*, 375 F. Supp. 3d 280, 339–40 (E.D.N.Y. 2019).

The Town worked through a two-year-long public process to understand what the community would tolerate regarding the future of HTO. Ultimately, 80% of the community supported a private-use airport with local regulations; only 5% of the community supported keeping HTO open a public-use airport. The deactivation-and-activation approach is the product of the democratic process—in a very real sense, this approach is the manifestation of the public interest. The public interest and equities plainly support the Town's position.

### CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court deny NBAA's Motion for a Temporary Restraining Order and Preliminary Injunction.

Dated: May 16, 2022

Respectfully submitted,

/s/ *Philip M. Bowman*

Philip M. Bowman
Cooley LLP
55 Hudson Yards
New York, NY 10001
(212) 479-6000
pbowman@cooley.com

William V. O'Connor (*pro hac vice* to be filed)
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121
(858) 550-6000
woconnor@cooley.com

Andrew Barr (*pro hac vice* to be filed)
Cooley LLP
1144 15th St., Suite 2300
Denver, CO  80202
(720) 566-4100
abarr@cooley.com

*Counsel for Defendant Town of East Hampton*

269089879