# Cooley

Philip M. Bowman
T: +1 212-479-6000
pbowman@cooley.com

Via ECF

July 22, 2022

The Honorable Joanna Seybert
United States District Court, Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

**Re:** *National Business Aviation Association, Inc. v. The Town of East Hampton*
(Case No. 2:22-cv-02824)

Dear Judge Seybert:

Pursuant to Rule III(B) of this Court's Individual Rules, the Town of East Hampton (the "Town") respectfully requests a Pre-Motion Conference and for permission to file a Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b).

***Background.*** This case concerns the Town's efforts to maintain a local airport that balances the pecuniary interests of aviation stakeholders against longstanding community concerns with noise, pollution, and safety. The Town owned, sponsored, and operated the East Hampton Airport ("HTO") as a public-use airport located in East Hampton, New York, for decades. (ECF No. 1 ("Compl.") ¶ 1.) Over time, HTO became less of a community asset and more of a hub for out-of-town interests, leading to a massive increase in the use of HTO. (Compl. ¶ 10.)

In September 2021, the Town obtained the legal right to take local control over HTO following a year-long process involving regular communication with the Federal Aviation Association ("FAA"), state regulators, experts, and the local community. (Compl. ¶ 33.) On January 20, 2022, the Town Board voted to close HTO at the end of February 2022 and open a new private-use airport, named the East Hampton Town Airport ("JPX"). (Compl. ¶ 35.) Following discussions with the FAA, the Town postponed the deactivation-and-activation until May 17, 2022 and May 19, 2022, respectively. (Compl. ¶ 36.) The Town also enacted new Town Code provisions and approved Rules and Regulations governing JPX's operational procedures to facilitate the transition to JPX. (Compl. ¶ 38.)

The Town faced an eleventh-hour barrage of litigation—including the present action—from a variety of aviation interests seeking to stop the deactivation of HTO. On May 16, 2022, without explanation or written order, a state court judge granted three temporary restraining orders enjoining the Town from "closing the Airport" or converting it to "a 'private use' facility." (*See, e.g.*, NYSCEF Index 602802/2022, NYSCEF No. 330, at 3.) In light of the state court's orders, the Town sent a letter to the FAA attaching copies of the TROs and requesting to "postpone the deactivation of HTO until further notice." (*See* ECF No. 17-1.) The FAA responded the next day and declined to stop the deactivation of HTO and activation of JPX. The FAA noted its "concern that the [state] Court" had "introduced a major safety issue" into federally regulated airspace and explained that the "deactivation of the East Hampton airport is a process that cannot be … safely stopped." (*See* ECF No. 17-2.) As a result, HTO was deactivated on May 18, 2022, and JPX was activated on May 19, 2022.

# Cooley

The Honorable Joanna Seybert
July 22, 2022
Page Two

**NBAA's Complaint.** NBAA brings a single claim under the Airport Noise and Capacity Act of 1990 ("ANCA"), seeking to stop the closure of HTO and to upend the Town's democratic and FAA-coordinated efforts to operate JPX as a private-use airport. (Compl. Prayer for Relief.) NBAA's Complaint should be dismissed for at least three reasons: (1) NBAA's claim is moot; (2) the FAA has primary jurisdiction over this claim; and (3) NBAA's Complaint fails to state a claim under ANCA.

**NBAA's Claim is Moot.** "A case becomes moot … when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *DiMartile v. Cuomo*, 834 F. App'x 678, 678 (2d Cir. 2021) (internal quotations omitted). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Yusupov v. Mayorkas*, 2021 WL 6105720, at *1 (E.D.N.Y. Dec. 23, 2021) (internal quotations omitted).

It is undisputed that HTO was deactivated by the FAA on May 18, 2022, and the private-use JPX was activated the following day. NBAA's Complaint seeks only injunctive relief tailored to HTO, asking this Court to enjoin the "Town's attempt to close the Airport and … impose noise and access restrictions at the Airport" and permanently "enjoin the Town from closing the Airport and imposing restrictions until such time as the Town complies with the requirements of ANCA." (Compl. Prayer for Relief.) NBAA specifically defines the term "Airport" to mean the East Hampton Airport (HTO). (Compl. ¶ 1.) Because this Court cannot enjoin what has already occurred, NBAA cannot receive their requested relief. Accordingly, NBAA's claim is moot and the Complaint should be dismissed.

**The FAA Has Primary Jurisdiction.** The primary jurisdiction promotes "proper relationships between the courts and administrative agencies charged with particular regulatory duties" to "ensure that they do not work at cross-purposes." *Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006) (citations omitted). Courts consider four factors when reviewing primary jurisdiction: "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." *Id.* at 82-83. Each factor weighs in favor of dismissing this case pending resolution by the FAA.

*First*, this case raises a policy question clearly within the FAA's expertise: does ANCA apply to the nearly 14,400 private-use airports in the country. This Court should defer to the FAA's determination on this technical policy question in the first instance. *See, e.g., U.S. v. The Boeing Co.*, 825 F.3d 1138, 1147 (10th Cir. 2016) (finding FAA had primary jurisdiction over aviation policy considerations).

*Second*, Congress expressly delegated the interpretation of ANCA to FAA. *See* 14 C.F.R. § 161.1. NBAA acknowledges that the FAA was entrusted to determine which airports are regulated under ANCA. (*See* Compl. ¶ 18 ("Acting under the authority delegated to it, the FAA promulgated regulations [under ANCA]…").) The FAA proposed the process that the Town ultimately undertook to deactivate HTO, did not raise any concerns that the Town's process would be inconsistent with ANCA, and has worked hand-in-hand with the Town for over a year. (*See* ECF No. 5-1.)

Cooley LLP   55 Hudson Yards   New York, NY   10001-2157
t: +1 212 479 6000  f: +1 212 479 6275  cooley.com

# Cooley

The Honorable Joanna Seybert
July 22, 2022
Page Three

*Third*, there will be substantial danger of inconsistent rulings as the FAA is currently considering identical issues in an ongoing administrative proceeding. *See* FAA Docket 16-22-05. Accordingly, this Court should be skeptical of NBAA's invitation to interfere with an ongoing FAA process. *See Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. Of Trade*, 412 U.S. 800, 821 (1973) ("The fact that issuing an injunction may undercut the policies served by the doctrine of primary jurisdiction is therefore an important element to be considered.").

*Finally*, a prior application has been made to the FAA. Again, the FAA is already considering the specific issue raised by the Complaint, which supports the conclusion that the doctrine of primary jurisdiction is appropriate." *Ellis*, 443 F.3d at 89. Accordingly, this Court should dismiss (or at minimum, stay) this case under the primary jurisdiction doctrine as the FAA should address this policy question in the first instance and is already engaged in an administrative process to resolve this issue.

**NBAA Fails to State a Claim.** NBAA seeks to apply ANCA to private-use airports—something that the FAA has never done and that runs counter to decades of FAA guidance. *See* 14 C.F.R. § 157.2. The FAA recognizes approximately 14,400 private-use airports, all of which are permitted to operate under a prior-permission-required model. (*See* Federal Aviation Administration, Airport Categories – Airports (last visited July 22, 2022), https://bit.ly/3JM6n4x.) NBAA asks this Court to ignore the FAA's longstanding practice, regulatory text, and the FAA's guidance to the Town and find for the first time ever that private-use airports are unable to control who uses the airport.

There is similarly no authority for NBAA's position that ANCA applies to airport closures. Since the enactment of ANCA, dozens of airports have permanently closed without any suggestion that ANCA applies. Moreover, ANCA's regulatory regime (Part 161) is silent regarding airport closures and Part 161 is separate and distinct from the regulations that govern airport closures (Part 157), demonstrating that the two operate independently of each other. No cases, statute, regulation, or other relevant precedent support NBAA's position.

Finally, NBAA alleges that the Second Circuit's decision in *Friends of East Hampton*, 841 F.3d 133 (2d Cir. 2016), "applies to airports regardless of federal funding status, and that ANCA furthermore preempts local laws seeking to impose noise and access restrictions." (Compl. ¶¶ 30-31.) This misreads the Second Circuit's opinion. In *Friends of East Hampton*, the court did not discuss private-use airports and its holding was limited to "public airport proprietors"—that is, public-use airports. 841 F.3d at 149-50. NBAA's strained reading of a single case cannot overcome the dearth of support for its novel position.

The Town respectfully requests this matter be set for a Pre-Motion Conference and that the Town be granted permission to file a motion to dismiss under Fed. R. Civ. P. 12(b).

    Respectfully,
    */s/ Philip M. Bowman*
    Philip M. Bowman